## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

|  |  |
|---|---|
| KENNETH WILSON,<br><br>        Plaintiff,<br><br>vs.<br><br>TK ELEVATORS CORPORATION,<br><br>        Defendant. | No.  C24-4041-LTS-MAR<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

### I.      INTRODUCTION

This case is before me on a motion (Doc. 7) to dismiss by defendant TK Elevator Corporation (TK Elevator).[1]  Plaintiff Kenneth Wilson has filed a resistance (Doc. 9) and TK Elevator has filed a reply (Doc. 10).  I find that oral argument is not necessary.  *See* Local Rule 7(c).

### II.      BACKGROUND

Wilson filed a petition (Doc. 5) on July 2, 2024, in the Iowa District Court for Woodbury County.  TK Elevator removed the case on August 8, 2024, based on federal question jurisdiction under 28 U.S.C. § 1331.  Wilson's petition (Doc. 5) alleges claims of disability discrimination under the Iowa Civil Right Act (ICRA) (Count I), disability discrimination under the Americans with Disabilities Act, As Amended (ADAAA) (Count II) and age discrimination under the ICRA (Count III).  He offers the following factual allegations in support of his claims:

> 10.     Wilson's most recent period of employment with TKE began in April 2021.

---

[1] Defendant notes that the complaint incorrectly identifies defendant as TK Elevators Corporation and the correct name for defendant is TK Elevator Corporation.

11.   At the time of his termination, Wilson weighed more than 375 pounds and was 54 years old.

12.   In January 2024, TKE assigned Wilson to work in Sioux City, Iowa under the direction of Superintendent Danny Troutman.

13.   At the time of Wilson's termination, Troutman was 38 years old.

14.   Wilson was one of the oldest employees at the job site in Sioux City.

15.   TKE assigned Wilson to work in a two-man crew with Tony Molnar at the Sioux City location.

16.   After approximately a week of working on the site, Wilson received a call from Troutman.

17.   Troutman informed Wilson that TKE had concerns Wilson was not physically able to climb eight flights of stairs in an emergency.

18.   Wilson told Troutman he could walk up eight flights of stairs.

19.   The next day, January 24, 2024, Troutman terminated Wilson.

20.   During the termination meeting, Troutman told Wilson he was terminated because TKE believed he was physically unable to perform tasks necessary to do his job, including climbing a ladder.

21.   Wilson was able to climb a ladder.

22.   TKE never asked Wilson whether he could climb a ladder before terminating him.

23.   TKE hired a younger employee to replace Wilson.

Doc. 5 at 2-3.  TK Elevator filed its pre-answer motion (Doc. 7) to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 15, 2024.

2

## III.    APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual*

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory.  *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6).  On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c).  Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.*  These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead.  The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so.  When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance  to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment

suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. ANALYSIS

TK Elevator argues each of Wilson's claims should be dismissed because Wilson has merely restated the elements for disability and age discrimination without any factual support. I will discuss each type of alleged discrimination claim below.

### A. Disability Discrimination

The ADAAA and ICRA prohibit employers from discriminating against individuals on the basis of disability.[2] 42 U.S.C. § 12112(a); Iowa Code § 216.61. A plaintiff can demonstrate discrimination through direct evidence or by raising an inference of discrimination through the *McDonnell Douglas*[3] burden-shifting framework. *See St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012). A prima facie case of disability discrimination requires the plaintiff to show he: (1) had a disability within the meaning of the relevant statute, (2) was qualified to perform the essential functions of his job with or without reasonable accommodation and (3) suffered an adverse employment action because of his disability. *Higgins v. Union Pacific Railroad Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (citing *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996-97 (8th Cir. 2014)).

---

[2] Claims of disability discrimination under the ADAAA and ICRA are analyzed under the same standards. *See Gardea v. JBS USA, LLC*, 915, F.3d 537, 541 (8th Cir. 2019). While Iowa courts look to federal statutes in interpreting the ICRA, the ICRA is not to be construed more narrowly than those statutes. *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 9-10 (Iowa 2014).

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the ADAAA, a disability is defined as a physical or mental impairment that substantially limits one or more major life activities, and also includes being regarded as having such an impairment. 42 U.S.C. § 12102(2)(A) & (C). Physical or mental impairments include "[a]ny physiological disorder or condition . . . affecting one or more body systems . . . ." 29 C.F.R. § 1630.2(h)(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

The ICRA defines disability as "the physical or mental condition of a person which constitutes a substantial disability."[4] Iowa Code § 216.2(5). The regulations for this statute provide "[t]he term 'substantially handicapped person' shall mean any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment." Iowa Admin. Code r. 161-8.26(l). A person is 'regarded as having an impairment' if he:

    a.     Has a physical or mental impairment that does not substantially limit major life activities but that is perceived as constituting such a limitation;

    b.     Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

    c.     Has none of the impairments defined to be "physical or mental impairments," but is perceived as having such an impairment.

*Id.* at r. 161-8.26(5).

---

[4] The statute does not define the term "substantial disability."

TK Elevator argues the perceived disability discrimination claims under Counts I and II should be dismissed because Wilson has made no factual allegations that, if true, would support a finding that his employment was discharged because of a perceived disability. It notes that Wilson does not identify the perceived disability. It further notes that to the extent the perceived disability is his weight, a physical characteristic such as weight is an insufficient basis for a perceived disability claim unless it is alleged to fall outside the normal range *and* the result of a physiological disorder. The allegations that TK Elevator discharged Wilson because he could not "walk up eight flights of stairs" and could not "climb a ladder" are insufficient to support a claim of disability discrimination, according to TK Elevator, because Wilson has merely alleged TK Elevator perceived he was impaired from performing only a narrow range of jobs or a couple tasks.

Wilson argues he has pleaded plausible claims of disability discrimination based on the information he has available to him at this time. He clarifies that he has not alleged his weight/obesity as his perceived disability, but has pleaded physical traits from which TK Elevator perceived him to have a disability, along with tasks and activities that TK Elevator perceived him to be unable to complete. Viewed as a whole, he argues these facts lead to the inference that TK Elevator perceived him to be morbidly obese or to be disabled with some other condition associated with excessive weight or obesity. Finally, Wilson notes he need not allege that TK Elevator perceived his impairment to substantially limit a major life activity, as that standard is no longer used under the ADAAA. The relevant inquiry is merely whether the employer perceived an impairment existed and causation.

"Under the ADA, being regarded as disabled by an employer can suffice to establish a disability within the meaning of the statute if the plaintiff shows that his employer subjected him to an adverse action 'because of an actual or perceived physical or mental impairment. . . .'" *Sanders v. Union Pacific Railroad Co.*, 108 F.4th 1055, 1060 (8th Cir. 2024) (quoting *Fischer v. Minneapolis Pub. Schs.*, 792 F.3d 985, 988 (8th Cir. 2015)). The Eighth Circuit has instructed:

7

> an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* it occurs as the result of a physiological disorder. Both requirements must be satisfied before a physical impairment can be found. In other words, even weight outside the normal range – no matter how far outside that range – must be the result of an underlying physiological disorder to qualify as a physical impairment under the ADA.

*Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016) (emphasis in original). "Taken as a whole, the relevant statutory and regulatory language makes it clear that for obesity to qualify as a physical impairment – and thus a disability – under the ADA, it must result from an underlying physiological disorder or condition." [5] *Id.* at 1109. While the ADA prohibits an employer from discriminating against an individual on the basis of having a physical impairment or being regarded as having such an impairment, it "does not prohibit an employer from acting on some other basis, *i.e.*, on its assessment that although no physical impairment currently exists, there is an unacceptable risk of future physical impairment." *Id.* at 1113. Thus, the "ADA does not prohibit discrimination based on a perception that a physical characteristic – as opposed to a physical impairment – may eventually lead to a physical impairment as defined under the Act." *Id.*

Based on *Morriss*, Wilson must allege that TK Elevator perceived his weight to be a condition that met the definition of "physical impairment." *Id.* There are no allegations in Wilson's petition that TK Elevator perceived Wilson to have a physical impairment based on weight or some other physical characteristic. As he states, he has "pleaded the physical traits from which [TK Elevator] perceived him to have a disability, along with those tasks and activities [TK Elevator] perceived him to be unable to do." Doc. 9-1 at 6. He adds that when "viewed as a whole, these facts lead to the reasonable inference that [TK Elevator] perceived him to be morbidly obese or to be disabled with some other

---

[5] The court clarified that this "remains the standard even after enactment of the ADAAA, which did not affect the definition of physical impairment." *Morriss*, 817 F.3d at 1112-13.

condition associated with excessive weight or obesity, like physiological disorders or cardiovascular disorders." *Id.*

There are no factual allegations to support a conclusion that TK Elevator's perceptions went beyond physical traits to the extent that it perceived Wilson to have a physical impairment (that is, that his weight was the result of an underlying physiological disorder). Even if the alleged perception is based on a physical characteristic that could eventually lead to a physical impairment, that is not enough to state a plausible claim. Wilson distinguishes *Morriss* only to the extent that it was dismissed at the summary judgment stage rather than on a motion to dismiss. He argues it is too early to determine whether he will be able to prove his perceived disability claims, whether obesity, morbid obesity or some other physiological or cardiovascular disorder related or associated with excessive weight/obesity. He contends that without discovery, he cannot determine exactly what TK Elevator perceived at the time it terminated his employment.

I disagree with Wilson's contention that he need not allege the specific impairment TK Elevator perceived him to have. "A plaintiff cannot state a claim under the 'regarded as' prong of the ADA . . . simply by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis." *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997). *See also Adler v. I&M Rail Link, L.L.C.*, 13 F. Supp. 2d 912, 938 (N.D. Iowa 1998) (requiring plaintiffs to replead perceived disability claims by identifying each plaintiff's specific impairment or injury).[6]

---

[6] While *Francis* and *Adler* are pre-ADAAA cases, the 2008 amendments provided that a plaintiff need no longer prove that a perceived impairment substantially limits a major life activity or is perceived to limit a major life activity. The amendments did not affect the definition of physical impairment, which requires an underlying physiological disorder or condition. *See Morriss*, 817

9

In other words, Wilson must allege that TK Elevator regarded him as having a physiological weight disorder and discriminated against him based on that perception in order to state a claim of perceived disability discrimination. Wilson's disability discrimination claims fall short in that regard.

I also disagree that Wilson should be permitted to rely on inferences until he can conduct discovery. The permissible inferences here do not go far enough, as Wilson has not identified any physical impairment that TK Elevator perceived him to have. *Compare Sturgill v. Norfolk Southern Railway Co.*, 391 F. Supp. 3d 598, 606 (E.D. Va. 2019) (concluding on a motion to dismiss that the employer withdrew its offer of employment on the basis of plaintiff's high BMI and did so pursuant to a policy which viewed plaintiff as presently suffering from a sleep apnea, diabetes and/or heart disease); *Brownwood v. Wells Trucking, LLC*, No. 16-cv-01264, 2017 WL 9289453, at *4-6 (D. Colo. Nov. 9, 2017) ("even assuming defendant perceived plaintiff as severely obese during his employment, plaintiff has failed to demonstrate he was regarded as disabled within the meaning of the ADA."). Because Wilson has not alleged sufficient facts from which an inference could be drawn that TK Elevator believed his weight to be the result of a physiological disorder, he has failed to state a claim of perceived disability discrimination under the ADAAA and ICRA.

## B.     Age Discrimination

TK Elevator argues Wilson's age discrimination claim under the ICRA should be dismissed because he has failed to provide factual allegations to support such a claim. Specifically, TK Elevator takes issue with the lack of factual support that (1) Wilson was qualified for the position, (2) that the replacement employee is sufficiently younger to

---

F.3d at 1112-13. *See also Brownwood v. Wells Trucking, LLC*, No. 16-cv-01264, 2017 WL 9289453, at *6 (D. Colo. Nov. 9, 2017) ("The Court is further persuaded that the passage of the ADAAA did not fundamentally alter the definition of 'impairment' or call into question the validity of prior judicial decisions holding that obesity, by itself, does not qualify.").

permit the inference of age discrimination, (3) that the replacement employee is similarly situated to him, or that (4) the termination was based on Wilson's age. Doc. 8 at 9. TK Elevator argues that Wilson's allegations support that his discharge was for a reason other than his age – specifically, because TK Elevator "had concerns Plaintiff was not physically able to walk eight flights of stairs in an emergency" and was informed "he was terminated because [TK Elevator] believed he was physically unable to perform tasks necessary to do his job, including climbing a ladder." Doc. 1-1 at ¶¶ 17, 20.

Under the ICRA, it is "an unfair or discriminatory practice . . . to discharge any employee, or to otherwise discriminate in employment . . . because of the age, race, creed, color sex, sexual orientation, gender identity, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation." Iowa Code § 216.6(1)(a). To state a claim of age discrimination under the ICRA, Wilson must allege (1) he was a member of a protected group, (2) was qualified for his position and (3) the circumstances of his discharge raise an inference of discrimination. *See Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 347-48 (Iowa 2023). Under the ICRA, a plaintiff must show only that age "played a part" in the adverse employment decision and need not prove age was the only reason. *See Newberry v. Burlington Basket Co.*, 622 F.3d 979, 982 (8th Cir. 2010) (citing *DeBoom v. Raining Rose Inc.*, 772 N.W.2d 1, 13 (Iowa 2009)).

Wilson alleges he has sufficiently pleaded a claim of age discrimination as he has alleged he was one of the oldest employees on the crew at 54 years old, was discharged by a 38 year old and replaced by a younger employee. He also cites his allegations that TK Elevator informed him it was concerned he could not perform necessary job duties without asking him if he could perform such duties or if he could demonstrate his abilities. He argues these allegations create an inference that his age had something to do with TK Elevator's perception of his alleged inabilities and termination of his employment. To the extent TK Elevator takes issue with a lack of allegations concerning whether his

11

replacement is "similarly situated," Wilson argues he should be permitted to engage in discovery before the court evaluates this aspect of his claim.

I find that Wilson has alleged sufficient facts to state a claim of age discrimination. As to whether he was qualified, he must allege that "with or without reasonable accommodation, [he] 'can perform the essential functions of the position . . . without endangering the health and safety of [himself] or others." *Goodpaster*, 849 N.W.2d at 14 (quoting *Boelman v. Manson State Bank*, 522 N.W.2d 73, 80 (Iowa 1994)). A person is qualified for a particular job when he or she can perform the essential functions of the job in spite of his or her age. *Id.* Wilson alleges he could climb eight flights of stairs and a ladder and was otherwise qualified to perform the essential functions of his position. Doc. 5 at ¶¶ 18, 21, 27.

While Wilson did not allege the age of his replacement, or that he was similarly situated to him, Wilson argues he has facts to support that aspect of his claim, to the extent such facts are required.[7] Wilson has also alleged sufficient circumstances that would allow a reasonable inference of age discrimination. *See Ward v. International Paper Co.*, 509 F.3d 457, 461 (8th Cir. 2007) (noting that an inference of age discrimination could be established with evidence that a substantially younger worker replaced the plaintiff).[8] The fact that the alleged circumstances may also allow a reasonable inference that Wilson's termination was unrelated to age is immaterial at this

---

[7] Wilson notes his replacement was 35 years old and given that he alleges he was replaced by this younger employee, it is reasonable to infer he had the same job title, responsibilities and reported to the same supervisor. *See* Doc. 9-1 at 10, n.6, 12. While federal Age Discrimination in Employment Act (ADEA) cases sometimes list an element of an age discrimination claim as "substantially younger, similarly situated employees were treated more favorably," *see Faulkner v. Douglas Cnty.*, 906 F.3d 728, 734 (8th Cir. 2018), that is not a requirement under the ICRA, but can be considered as a circumstance raising an inference of discrimination.

[8] While *Ward* was an ADEA case, the same analysis applies except that the ADEA requires that age be the but-for cause of the adverse employment action, whereas the ICRA requires only that age be a motivating factor. *See Smothers v. Rowley Masonic Assisted Living Community, LLC*, 63 F.4th 721, 727 (8th Cir. 2023).

stage. When viewing the alleged facts and permissible inferences in Wilson's favor, he has sufficiently pleaded a claim of age discrimination under the ICRA.

## C. *Leave to Amend*

TK Elevator argues that any amendment would be futile because Wilson will not be able to allege a specific perceived disability or any factual allegations regarding TK Elevator's beliefs concerning any specific perceived disability. It further contends Wilson will not be able to allege any type of perceived physiological disorder, history of workers' compensation claims or history of disability claims. Wilson requests leave to file an amended complaint in the event additional allegations are necessary to cure any pleading deficiencies.

While TK Elevator may be correct that Wilson may not be able to allege a specific perceived disability or any facts regarding TK Elevator's beliefs of a specific perceived disability, I find that he should be granted one opportunity to amend his complaint in the event he is able to make such allegations.

## V. *CONCLUSION*

For the reasons stated herein, TK Elevator's motion (Doc. 7) to dismiss is **granted in part** and **denied in part**. It is **denied** as to Wilson's claim of age discrimination (Count III) under the ICRA and **granted** as to his claims of disability discrimination under the ADAAA and ICRA (Counts I and II). However, Wilson may file an amended complaint as to Counts I and II if he so chooses. Any such amended pleading must be filed on or before **November 19, 2024**.

**IT IS SO ORDERED** this 29th day of October, 2024.

_____
Leonard T. Strand
United States District Judge